UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SHEREE WELLS | CIVIL ACTION |
| VERSUS | NO. 14-1073 |
| WARDEN ROLAND LADREYT, ET AL. | SECTION: "F"(1) |

### REPORT AND RECOMMENDATION

Plaintiff, Sheree Wells, filed this *pro se* and *in forma pauperis* civil action pursuant to 42 U.S.C. § 1983. She named as defendants Warden Roland Ladreyt, Nurse Donna Martin, Assistant Warden Kenny Decorte, Deputy Samantha White, Deputy Sheldon Bailey, and Nurse Dawn Oubre. In the complaint, plaintiff asserted various claims arising from her former confinement at the Nelson Coleman Correctional Center.[1]

The defendants filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2] Plaintiff thereafter filed a motion for leave to file an amended complaint to attempt to remedy the defects noted in the defendants' motion.[3] Plaintiff's motion was granted, she was instructed to file her amended complaint on or before July 25, 2014, and the motion to dismiss was held in abeyance pending filing of the amended complaint.[4] Plaintiff has since filed her amended complaint as ordered,[5] and the pending motion to dismiss will be considered in light of the allegations contained in both the original and amended complaints.

---

[1]  Rec. Doc. 1.

[2]  Rec. Doc. 6.

[3]  Rec. Doc. 12.

[4]  Rec. Doc. 13.

[5]  Rec. Doc. 14.

I.  Motion for Leave to File a Supplemental Memorandum

Before turning to the pending motion to dismiss, the Court notes that the defendants have filed a motion for leave to file a supplemental memorandum in support of their motion to dismiss. In the proposed supplement, they wish to add an argument that plaintiff failed to exhaust her administrative remedies.[6]  However, the undersigned recommends that motion be denied for three reasons.  First, the additional argument is unnecessary, in that, for the reasons set forth in detail in this Report and Recommendation, the arguments in the original motion to dismiss have merit and form a sufficient basis on which to grant the motion.  Second, allowing the supplementation would only delay these proceedings, because plaintiff would require an extension of time to respond to the new argument.  Third, in the context of the instant motion to dismiss, the Court would be unable to determine that plaintiff in fact failed to exhaust her administrative remedies.  Although the defendants allege that she did not submit a grievance at the Nelson Coleman Correctional Center where her claims arose, she alleges in her verified complaint that she did.[7]  Her allegations concerning exhaustion must be accepted true and all reasonable inferences must be drawn in her favor for the purposes of the motion to dismiss.  See, e.g., Carter v. Coody, Civ. Action No. 07-444, 2007 WL4577357 (M.D. La. Dec. 21, 2007).[8]  Accordingly, even if the proposed supplementation were allowed, the argument offered therein would be rejected.

---

[6]   Rec. Doc. 15.

[7]   Rec. Doc. 1, p. 3.

[8]   It is for this reason that an argument that a plaintiff has failed to exhaust her administrative remedies is more appropriately brought in a motion for summary judgment, supported by copies of all of her grievances and the applicable grievance procedures from the facility in question.  Counsel for defendants is instructed to follow this procedure in the future.

## II. Plaintiff's Allegations

In her original complaint, plaintiff made the following allegations: On August 24, 2013, she complained that she was in need of a shower due to unspecified "female issues." She was denied an emergency shower and "written-up after disregard officers order." The "mail man" intercepted and read her outgoing mail and revealed the mail's intended recipients to her fellow inmates. When she was placed in "lockdown," a female trustee gave her "water laced with cleaning chemicals." As a result, plaintiff was "poisoned" and "almost died." She notified defendant Bailey, who told her to pour out the water. She was then "immediately taken to Medical," and the physician gave her medication. When that medication made her feel "strange," she returned to the physician and he "upped [her] dose of medication." When her medication ran out, an unspecified nurse replaced plaintiff's medication with that of another inmate. After she took that medication, she again felt sick. The guards called the medical department, and defendant Oubre responded. Oubre told plaintiff that she "took too much and that was not [her] medication." Plaintiff was denied an administrative grievance form to submit a complaint. She alleges that unspecified staff members at the jail retaliated against her by giving her "disciplinary write-up" after she had "written the Record Dept. for redress."[9]

Plaintiff's amended complaint then provided:

> Now Into Court comes the plaintiff (Sheree Wells) that respectfully request this Honorable Court to amend the following claim(s) for relief and states the following grounds therefor, to-wit:
>
> Claim #1: Plaintiff contends that while acting under color of State Law the warden of the Nelson Coleman Correctional Center failed to address and/or

---

[9] Rec. Doc. 1.

investigate the surrounding circumstances as to the fact that I had been deliberately poisoned by a female prisoner that was under the care and custody of the warden.

      Claim #2: Plaintiff further contends that this incident occurred while locked-up on disciplinary lockdown.

      Claim #3: Plaintiff contends that the Nelson Coleman Correctional Center medical records should clearly reflect the full day and date of this incident, and any and all medical treatment(s).

      Claim #4: Plaintiff contends that prisoner (Cynthia Dufrene) witnessed this incident and will testify at trial to this matter.

      Claim #5: Plaintiff alleges that Correctional Officer (Ms. Bailey) was on duty at the time of this incident and informed the warden as to what had occurred, but to no avail the warden to investigate or act to this urgent matter. And while acting under color of law the warden and corrections security staff failed to provide a safe confinement environment as required by State and Federal law. And further alleges that the herein correctional official(s) knew or should have known that their negligent acts constitutes cruel and unusual punishment in violation of the 8th and 14th Amendments of the United States Constitution.

      DAMAGES: Plaintiff seeks damages in the amount of $2.5 Million Dollars for mental anguish, emotional distress and punitive damages in their individual and official capacity.[10]

Unfortunately, the amended complaint does not remedy the defects of the original complaint. Therefore, it is recommended that the defendants' motion to dismiss be granted for the following reasons.

### III. Legal Standards for Motions to Dismiss

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007) (quotation marks and ellipsis omitted). Accordingly, Rule 12(b)(6) allows a defendant to move for expeditious dismissal when a plaintiff fails to state a claim upon which relief can be granted.

---

[10] Rec. Doc. 14.

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>In re</u> <u>Katrina Canal Breaches Litigation</u>, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted).  The United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

Again, in deciding a Rule 12(b)(6) motion, it must be remembered that a court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff.  <u>Lormand v. US Unwired, Inc.</u>, 565 F.3d 228, 239 (5th Cir. 2009); <u>Baker v. Putnal</u>, 75 F.3d 190, 196 (5th Cir. 1996).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." <u>Iqbal</u>, 556 U.S. at 678.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." <u>Id</u>. at 679.

### IV.  Plaintiff's Federal Claims

#### A.  Official-Capacity Claims

As the defendants correctly argue in their motion, plaintiff clearly has not stated proper claims against them in their official capacities.  "Official capacity suits generally represent another

way of pleading an action against an entity of which an officer is an agent." Burge v. Parish of St. Tammany, 187 F.3d 452, 466 (5th Cir. 1999). Accordingly, official-capacity claims against the defendants would in reality be claims against the local governmental entity they serve. However, as the United States Fifth Circuit Court of Appeals has explained:

> In order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, a plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted. To satisfy the cause in fact requirement, a plaintiff must allege that the custom or policy served as a moving force behind the constitutional violation at issue or that her injuries resulted from the execution of an official policy or custom. The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.

Spiller v. City of Texas City, Police Department, 130 F.3d 162, 167 (5th Cir. 1997) (quotation marks, brackets, and citations omitted). Further, "[a] plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." Colle v. Brazos County, Texas, 981 F.2d 237, 245 (5th Cir. 1993); see also Wetzel v. Penzato, Civ. Action No. 09-7211, 2009 WL 5125465, at *3 (E.D. La. Dec. 23, 2009). Rather, she must *identify* the policy or custom which allegedly caused the deprivation of her constitutional rights. See, e.g., Murray v. Town of Mansura, 76 Fed. App'x 547, 549 (5th Cir. 2003); Treece v. Louisiana, 74 Fed. App'x 315, 316 (5th Cir. 2003); Wetzel, 2009 WL 5125465, at *3. In the instant case, plaintiff does not allege that her constitutional rights were violated as a result of a policy or custom, much less identify such a policy or custom. Accordingly, she has failed to state proper official-capacity claims against the defendants.

Additionally, for the following reasons, the undersigned finds that plaintiff has also failed to state proper claims against the defendants in their individual capacities.

B.  Individual-Capacity Claims

With respect to any claims plaintiff is asserting against the named defendants in their individual capacities, it is not always clear which defendant relates to which claim.  Nevertheless, regardless of which defendant allegedly took (or failed to take) the actions in question, plaintiff's underlying claims should be dismissed for the following reasons.

1.  Failure-to-Protect Claim

To the extent that plaintiff is claiming that the defendants failed to protect her from harm, that claim clearly fails.  It is, of course, true that "the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including ... protection from harm, during their confinement."  Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996) (en banc).  However, the United States Fifth Circuit Court of Appeals has explained:

> To establish a failure-to-protect claim under § 1983, [an inmate] must show that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection.  In order to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995) (citations and internal quotation marks omitted).  Moreover, "[d]eliberate indifference must be viewed from [the defendant's] perspective at the time in question, not with hindsight's perfect vision."  Jackson v. Everett, 140 F.3d 1149, 1152 (8th Cir. 1998).

In the instant case, plaintiff does not allege that any defendant had any reason whatsoever to believe that she would be poisoned by a fellow inmate, and a defendant cannot be said to have

7

been deliberately indifferent in failing to protect against a potential harm of which he or she was unaware.  Farmer v. Brennan, 511 U.S. 825, 844 (1994); Bland v. Terrebonne Parish Criminal Justice Complex, Civ. Action No. 09-4407, 2009 WL 3486449, at *6 (E.D. La. Oct. 23, 2009). Moreover, it is clear that mere negligence by officials in failing to protect an inmate cannot serve as the basis of a § 1983 claim.  Oliver v. Collins, 914 F.2d 56, 60 (5th Cir. 1990).

## 2.  Grievance Procedure Claim

To the extent that plaintiff is seeking to hold the defendants liable for failing to give her a grievance form or for failing to act on her complaints after she submitted a grievance, that claim also fails.  An inmate has no constitutional right to an adequate and effective grievance procedure or to have her complaints investigated and resolved to her satisfaction.  Bonneville v. Basse, 536 Fed. App'x 502, 503 (5th Cir. 2013);  Propes v. Mays, 169 Fed. App'x 183, 184-85 (5th Cir. 2006); Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005); Davis v. St. Charles Parish Correctional Center, Civ. Action No. 10-98, 2010 WL 890980, at *5 (E.D. La. Mar. 8, 2010); Carter v. Strain, Civ. Action No. 09-15, 2009 WL 3231826, at *3 (E.D. La. Oct. 1, 2009); Tyson v. Tanner, Civ. Action No. 08-4599, 2009 WL 2883056, at *5 (E.D. La. Aug.  25, 2009); George v. Travis, Civ. Action No. 07-986, 2007 WL 1428744, at *7 (E.D. La. May 10, 2007); Mahogany v. Miller, Civ. Action No. 06-1870, 2006 WL 4041973, at *1 (E.D. La. Aug. 3, 2006), appeal dismissed, 252 Fed. App'x 593 (5th Cir. 2007).

## 3.  Medical Claim

Plaintiff's claim for inadequate medical care should likewise be dismissed.  Regardless of whether an inmate is a pretrial detainee or a convicted prisoner, her constitutional right to medical care is violated only if her serious medical needs are met with deliberate indifference on the part of

penal authorities. See Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999). Here, plaintiff's allegations are insufficient to state a claim of deliberate indifference.

Regarding the "deliberate indifference" requirement, the United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks, brackets, and citations omitted). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

In the instant case, plaintiff acknowledges that she was immediately seen and treated by the jail's medical staff after she complained of being poisoned. Although she alleges that errors were made in her treatment, she does not contend that the defendants ignored her complaints or intentionally treated her incorrectly. Moreover, while she argues that her treatment was negligent, it is clear that an inmate's federal medical claim cannot be based on mere negligence or malpractice. Hall v. Thomas, 190 F.3d 693, 697-98 (5th Cir. 1999); see also Daniels v. Beasley, 241 Fed. App'x 219, 220 (5th Cir. 2007); Nunley v. Mills, 217 Fed. App'x 322, 324 (5th Cir. 2007); Kelly v.

Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *4 (E.D. La. July 5, 2007); Cerna v. Texas Tech Medical Staff, No. 2:03-CV-0322, 2004 WL 42602, at *2 (N.D. Tex. Jan. 7, 2004).

### 4.  Retaliation Claim

Plaintiff also has not stated a proper retaliation claim.  The United States Fifth Circuit Court of Appeals has noted that retaliation claims must be "regarded with skepticism."  See Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995) (quotation marks omitted).  Further, the Fifth Circuit has held:

> To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. Causation requires a showing that but for the retaliatory motive the complained of incident would not have occurred.

McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998) (internal quotation marks and ellipsis omitted).

Here, plaintiff alleges that staff members at the jail retaliated against her by giving her an unspecified "disciplinary write-up" after she had "written the Record Dept. for redress."  She does not specify which members of staff took that action.  However, even if the Court assumes that it was one or more of the named defendants, a prisoner asserting a retaliation claim must allege direct evidence of retaliatory motivation or show a chronology of events from which retaliation may plausibly be inferred.  Woods, 60 F.3d at 1166.  Plaintiff does not do so here and instead offers nothing more than purely conclusory allegations in support of her claim.  It is clear that conclusory allegations alone are insufficient to state a proper retaliation claim.  See, e.g., Coleman v. Platt, 558 Fed. App'x 493, 494 (5th Cir. 2014); Shelton v. Lemons, 486 Fed. App'x 395, 397 (5th Cir. 2012);

Williams v. Dretke, 306 Fed. App'x 164, 167 (5th Cir. 2009); Randle v. Woods, 299 Fed. App'x 466, 468 (5th Cir. 2008).

### 5. Mail Claim

As for plaintiff's claim that the "mail man" intercepted and read her outgoing mail and revealed the mail's intended recipients to her fellow inmates, she does not identify which, if any, of the named defendants is the "mail man." However, even in the unlikely event that she is referring to one of the persons she has sued in this lawsuit, the actions of the "mail man" do not give rise to a claim under § 1983. In her complaint, plaintiff indicates that the mail in question was to "other people in other jails," and it is clear that prison officials can legitimately regulate and even prohibit "inmate-to-inmate" communications. Turney v. Safely, 482 U.S. 78 (1987); Bruscino v. Pugh, 232 Fed. App'x 763, 764-65 (10th Cir. 2007); Nasir v. Morgan, 350 F.3d 366 (3rd Cir. 2003). Further, even if the "mail man" revealed the identity of her correspondents to her fellow inmates, plaintiff does not indicate, and this Court cannot guess, what constitutional provision she believes was violated by those revelations. Cf. Patin v. LeBlanc, Civ. Action No. 11-3071, 2012 WL 3109402, at *20 (E.D. La. May 18, 2012) ("This Court has searched the reported cases from around the country and the United States Supreme Court and has been unable to locate any such recognized right to privacy on the information placed on the outside of an envelope. Without some cognizable constitutional violation, or specific danger to him, [plaintiff] has not stated a non-frivolous claim under § 1983."), adopted, 2012 WL 3109398 (E.D. La. July 31, 2012).

### 6. Shower Claim

Plaintiff's claim that she was denied an emergency shower when she experienced unspecified "females issues" also fails. Inmates are not entitled to shower on demand. Rather, to state a

11

cognizable claim based on the denial of an opportunity to shower, an inmate must allege that the denial subjected her to a substantial risk of harm. See Brumly v. Livingston, 459 Fed. App'x 470, 472 (5th Cir. 2012) ("Brumley failed to state an Eighth Amendment claim based on the denial of ... showers because he failed to properly allege that he was subjected to a substantial risk of harm."). Plaintiff has made no such allegation, and no substantial risk of serious harm can be inferred from the denial of a shower on this one occasion.

### V.  Plaintiff's State Claims

Lastly, to the extent that plaintiff is asserting any claims under state law, the Court should decline to consider any state law claims. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction ...."); see also Jackson v. Mizzel, 361 Fed. App'x 622, 627 (5th Cir. 2010) ("Because [the plaintiff] states not one valid federal claim, the district court properly declined jurisdiction over his Louisiana causes of action."); Bass v. Parkwood Hospital, 180 F.3d 234, 246 (5th Cir. 1999) ("When a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims."). If plaintiff wishes to pursue claims under state law, she should do so in the state courts.

### **RECOMMENDATION**

It is therefore **RECOMMENDED** that the defendants' motion for leave to file a supplemental memorandum in support of their motion to dismiss, Rec. Doc. 15, be **DENIED**.

It is **FURTHER RECOMMENDED** that the defendants' motion to dismiss, Rec. Doc. 6, be **GRANTED** and that plaintiff's claims be **DISMISSED WITHOUT PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[11]

New Orleans, Louisiana, this thirty-first day of July, 2014.

   **SALLY SHUSHAN**
   **UNITED STATES MAGISTRATE JUDGE**

---

[11]  Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.